## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DIANA L. HUMMEL,

      Plaintiff,

vs.                                      Case No. 8:06-CV-725-T-EAJ

MICHAEL J. ASTRUE[1]
Commissioner of
Social Security,

      Defendant.

_____/

## FINAL ORDER

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for period of disability and Disability Insurance Benefits ("DIB").[2]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed and the complete administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with

---

[1] On February 1, 2007, Michael J. Astrue became the Commissioner of Social Security. Therefore, pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 16).

applicable legal standards.  See 42 U.S.C.  § 405(g).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner.  See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).[3]

If the Commissioner committed an error of law, the case must be remanded for application of the correct legal standard.  See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## I.

Plaintiff filed an application for DIB on December 6, 2002, and alleges a disability onset date of May 10, 2001. (T 84-86)  Plaintiff claims she is disabled due to rheumatoid arthritis in her hands, headaches, back pain, uneven leg length, depression, and chest pain. (T 13, 101)  The ALJ held a hearing on Plaintiff's application for DIB on April 4, 2005.  Forty-seven years old at the time of the hearing, Plaintiff has a high school education and has past work experience as furniture sales agent, office clerk, material handler, and accounting clerk. (T 18, 30)

In a decision dated October 25, 2005, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset of disability. (T 12-20)  The ALJ determined that

---

[3]  Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit.  Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

although Plaintiff suffers from the severe impairments of headaches, periodic chest pains, and arthritis of the hands and knees, these impairments do not meet or medically equal one of the impairments in Appendix 1, Subpart P, Regulations No. 4. (T 20)

Further, the ALJ found that Plaintiff's allegations regarding the severity of her impairments are not entirely credible.  The ALJ concluded that Plaintiff has the following residual functional capacity ("RFC") for a restricted range of light work:[4]

> The claimant can lift up to 20 pounds occasionally and 10 pounds frequently; she can stand, walk and sit for up to six hours each in a typical eight-hour workday.  She has a frequent limitation on fine manipulation and repetitive grasp.  She cannot bend, stoop or crouch nor can she work in unprotected heights.  She requires a clean temperature-controlled work environment.  She is limited to simple repetitive tasks due to an occasional limitation in concentration caused by pain.

(T 18)

Relying on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff's severe impairments prevent her from performing her past relevant work but that she is capable of making the vocational adjustment to cafeteria cashier, ticket taker, or office helper. (T 19) Therefore, the ALJ determined that Plaintiff is not disabled under the Act.

On February 6, 2006, the Appeals Council declined to review the ALJ's decision, making it the final decision of the Commissioner. (T 5-8)  Plaintiff filed a timely petition for judicial review.

---

[4]  Light work, defined at 20 C.F.R. §§ 404.1567(b), 416.967(b), involves the lifting of not more than twenty pounds occasionally with frequent lifting and carrying of objects weighing up to ten pounds.  The regulations further provide: "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. §§ 404.1567(b), 416.967(b).

Plaintiff has exhausted all administrative remedies, and the Commissioner's decision is ripe for review under the Act.

Most of the medical evidence has been summarized in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

## II.

Plaintiff raises three issues on appeal: (1) the Commissioner erred by improperly rejecting the opinion of one of Plaintiff's treating physicians; (2) the Commissioner erred by failing to properly credit Plaintiff's subjective complaints of pain; and (3) the Commissioner erred in finding that Plaintiff's lower back pain, obesity, hip arthritis, and neck and shoulder pain are not severe impairments.

**A.**  Plaintiff argues that the ALJ improperly discounted the opinion of one of Plaintiff's treating physicians,  A.M. Arain, M.D. ("Dr. Arain") (Dkt. 21 at 2).  On April 7, 2003, Dr. Arain evaluated Plaintiff for possible inflammatory arthritis in her hands and concluded that she had continuous pain and difficulty grasping and holding and performing activities. (T 402-05)  It is this diagnosis Plaintiff contends the ALJ inappropriately disregarded.  Plaintiff submits that Dr. Arain's opinion supports Plaintiff's argument that she suffers from arthritis in her hands to such an extent that she is unable to perform the jobs identified by the VE.

In assessing medical evidence in a disability case, the ALJ is required to state with particularity the weight given to different medical opinions and the reasons therefor. Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (citation omitted).  Generally, a treating physician's opinion is entitled to considerable weight unless there is good cause to reject those opinions. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).  The ALJ may discount a treating

physician's opinion if it is not well-supported by medical evidence or is inconsistent with the record as a whole.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159-60 (11th Cir. 2004) (ALJ may discount a treating physician's opinion when that opinion is unsupported by the medical evidence and contradicts the physician's own treatment notes).

The ALJ reviewed Dr. Arain's treatment records and his examination of Plaintiff on the following dates:  in April 2003 for an evaluation of inflammatory arthritis in her hands (T 14); in April 2004 for complaints of pain and swelling in her right knee (T 16); in June 2004 for persistent symptoms of swelling and pain in her right knee (T 17); in July 2004 for a follow-up visit (Id.); and in February 2005 for a final follow-up visit (Id.).

Nevertheless, Plaintiff argues that the ALJ failed to incorporate into his decision Dr. Arain's finding that Plaintiff has difficulty holding and grasping and performing work with her hands.  The ALJ afforded Dr. Arain's opinions regarding Plaintiff's hand pain the appropriate weight.  First, the ALJ noted Plaintiff's limitations due to the arthritis in her hands in Plaintiff's RFC:  "She has a frequent limitation on fine manipulation and repetitive grasping."[5] (T 18)  The ALJ also discussed Dr. Arain's April 2003 diagnosis of Plaintiff's inflammatory arthritis in both hands:

---

[5] Interestingly, in her brief Plaintiff appears to concede that the ALJ incorporated Dr. Arain's findings into the RFC determination: "Dr. Arain's opinion regarding the marked limitation of use of the hands precludes frequent use of the hands *as indicated by the ALJ's decision.*" (Dkt. 21 at 3, emphasis added).  Plaintiff then argues briefly that she could not perform the jobs identified by the VE within the limitations set by her RFC.  The VE addressed this concern in his testimony. When asked to explain how Plaintiff could perform the jobs of ticket taker and cafeteria cashier with a frequent limitation on grasping and handling tickets and money, the VE clarified that in those positions Plaintiff may use her hands frequently for a short period of time every day, such as during the lunch hour, while the rest of her shift she is "doing nothing." (T 55)  Thus, Plaintiff's limitations were clearly considered by the VE when he identified the jobs she is capable of performing and were also considered by the ALJ in formulating his opinion.

> [Dr. Arain's examination] revealed swelling and stiffness in the fingers, mostly in the index and the distal and proximal interphalangael joints, but no problems with circulation or sensation in the hands (Ex. 12F). X-rays showed marked narrowing as well as osteophyte formation mostly in the above-cited joints. Dr. Arain diagnosed inflammatory arthritis of both hands, specially the index fingers, and recommended fusion or some other type of treatment because of the alleged functional limitations.

(T 14) In considering Dr. Arain's decision to refer Plaintiff to a hand surgeon based on her difficulty grasping, holding, and performing work, the ALJ concluded that this was "unsupported by the overall record up to that point." (T 17) The ALJ also reviewed records of Dr. Arain's treatment of Plaintiff for knee pain between April 2004 and January 2005. During these visits, despite that Dr. Arain was the physician who had diagnosed her with inflammatory arthritis, Plaintiff made no mention of her hand pain. (Id.; T 478-83) Further, Dr. Arain's June 2003 report to the Office of Disability Determinations did not include an RFC assessment (402-05); Dr. Arain did not conclude that Plaintiff was unable to work.

Additionally, in October 2003, Edgar Janer, M.D. ("Dr. Janer"), a rheumatologist whose opinions the court discusses in the next section, noted Plaintiff's comments that therapy he prescribed for her hands was helpful. (T 426) In fact, Dr. Janer's treatment records contain no objective findings of a totally disabling impairment related to Plaintiff's hands. (T 369-70, 425-27) During a consultative examination performed by R. Krishna Moorthy, M.D. ("Dr. Moorthy"), Plaintiff demonstrated normal rheumatoid-factor and sedimentation-rate test results. (T 338-39) Dr. Moorthy also noted an absence of deformity, pain, heat, redness, or inflammation in Plaintiff's hands, and normal grip strength and fine manipulation.

Thus, Plaintiff's argument that the ALJ ignored Dr. Arain's findings is unpersuasive.  The ALJ adequately discussed Dr. Arain's findings regarding Plaintiff's difficulty in performing tasks with her hands and incorporated the limits he found supported by the evidence as a whole.

**B.**  Plaintiff also contends that the ALJ erred in rejecting Plaintiff's subjective complaints of pain relating to headaches and arthritis.

It is incumbent on the ALJ to make credibility findings as to claimant's testimony.  See generally Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985).  The Eleventh Circuit has established a three-part standard to use when evaluating a claimant's subjective complaints of pain or other subjective symptoms.  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  A plaintiff must show: (1) evidence of an underlying medical condition, and either (2) the medical evidence substantiates the severity of the pain from the condition, or (3) that the condition is of sufficient severity that it would be reasonably expected to produce the pain alleged.  Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986).[6]

An ALJ's credibility determination "does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the reviewing court] to conclude that the ALJ considered her medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotation marks and citations omitted).   It is the Commissioner's responsibility to draw inferences from the evidence, and those inferences will not

---

[6] This standard is consistent with Social Security regulations which provide that a claimant may establish a disability through subjective testimony of pain if "medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms." Elam v. R. R. Ret. Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (citing 20 C.F.R. §§ 404.1529, 416.929).

be overturned if supported by substantial evidence. Davis v. Apfel, 93 F. Supp. 2d 1313, 1316 (M.D. Fla. 2000) (citation omitted).

Although the ALJ did not expressly cite to the applicable standard, the ALJ's findings and discussion indicate that he was aware of and applied the proper standard. See Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002). The ALJ analyzed whether the medical evidence supported the severity of Plaintiff's allegations and found no evidence of an impairment which would restrict Plaintiff's ability to work as Plaintiff claimed. The ALJ therefore found Plaintiff's testimony generally not credible.

The only question remaining is whether the ALJ's assessment of Plaintiff's testimony regarding her symptoms and restrictions is based on substantial evidence.[7] The court concludes that it is.

### Plaintiff's Complaints of Arthritis in Her Hands

The ALJ cited several specific reasons for rejecting Plaintiff's testimony as to the effect of the arthritis in her hands. For example, the ALJ considered the treatment records of Dr. Janer, who first examined Plaintiff in January 2003. (T 371-72) At that time, Dr. Janer diagnosed Plaintiff with arthritis in her hands of a post-traumatic and degenerative nature, rather than inflammatory arthritis. (T 372) After performing an examination of her in April 2003, however, Dr. Janer referred Plaintiff to Dr. Arain for an evaluation of inflammatory osteoarthritis, which Dr. Arain ultimately diagnosed. (T 369, 405) The ALJ noted that Plaintiff returned to Dr. Janer in October 2003 with complaints of hand pain and reported that therapy was helpful. (T 426) X-rays of Plaintiff's hands showed

---

[7] Credibility determinations are the province of the Commissioner, so long as those determinations are supported by substantial evidence. See Carnes v. Sullivan, 936 F.2d 1215, 1219 (11th Cir. 1991) (citation omitted).

findings consistent with osteoarthritis. (T 383)  Dr. Janer urged Plaintiff to continue with her hand therapy and also referred her to a hand surgeon, apparently because therapy, although helpful, was not entirely effective. (T 369-70, 426-27)  In fact, despite Dr. Janer repeatedly referring her to a hand surgeon and Dr. Arain recommending it as well (T 403), it is not clear from the record whether Plaintiff actually followed through with this.  According to Plaintiff's testimony, she was "open to [joint replacement]" but has not had the procedure because "they haven't come to exactly what needs to be done." (T 38) As earlier noted, Dr. Janer did not find that Plaintiff suffered from a totally disabling hand impairment.

The ALJ also mentioned Plaintiff's treatment by George Sidhom, M.D. ("Dr. Sidhom") beginning in March 2004 for pain management treatment for pain in her hands, back, and legs, through the use of steroid injections and nerve blocks. (T 15)  Plaintiff reported a decreased level of pain over the course of her treatment.  (T 484-94)  The ALJ further highlighted the fact that Plaintiff made no mention of hand pain to Dr. Arain during the period of April 2004 to January 2005 while he was treating her for knee symptoms. (T 17)  Dr. Moorthy also noted in February 2003 that Plaintiff showed a normal range of motion in her hands and had normal grip strength and fine manipulation. (T 339)

The ALJ further found that Plaintiff's complaints of continuous disabling pain are contradicted by the evidence that Plaintiff is able to occasionally dust and sweep, shop for groceries with assistance, do laundry, and visit friends and relatives. (T 18, 95-98) The ALJ elicited testimony from Plaintiff that her typical day without a headache involves waking up, dipping her hands in a paraffin wax treatment to ease her arthritis pain, pouring a bowl of cereal, watching television, and perhaps going to church. (T 38, 46-48)  Although Plaintiff testified that her joint pain restricts her

9

ability to write, use a computer, and dress herself, the ALJ noted that she sat comfortably through the hearing before him without evidence of pain "even though her hands were deformed and arthritic-looking." (T 18)

While the ability to engage in everyday activities of short duration such as housework or fishing does not disqualify a claimant from receiving disability benefits, Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997), the Commissioner may properly rely on a claimant's daily activities, among other evidence, in determining whether a claimant is entitled to disability benefits. Johnson v. Barnhart, 268 F. Supp. 2d 1317, 1328 (M.D. Fla. 2002) (internal citations omitted); see also Markham v. Califano, 601 F.2d 533, 534 (10th Cir. 1979). Here, the ALJ did not exclusively rely on Plaintiff's daily activities in finding her testimony not fully credible. The ALJ determined, however, that the aggregate of Plaintiff's daily activities was inconsistent with her allegations of total disability.

Finally, there is little evidence, as Plaintiff contends, that the Commissioner erred in not considering Plaintiff's twice daily paraffin wax treatments to ease the arthritis in her hands. The ALJ expressly mentioned the treatments in reciting Plaintiff's testimony of her daily activities; Plaintiff's argument that the ALJ did not consider the treatment method in his decision is unfounded.

Thus, substantial evidence supports the ALJ's assessment of Plaintiff's testimony as to the effect of the arthritis in her hands.

### Plaintiff's Complaints of Headache Pain

Plaintiff also contends that the ALJ erred in rejecting her complaints of disabling pain due to migraine headaches. Plaintiff testified to up to 13 migraines a month that prevent her from doing work and make her nauseous and extremely sensitive to light and sound. (T 44, 49) Allegedly the

headaches can last from two hours to all day, and they leave Plaintiff exhausted even after the pain subsides. (T 45)  The ALJ noted Plaintiff's testimony that her headaches are worsened by light and sound. (T 13)  The ALJ found that Plaintiff's headaches are a severe impairment and Plaintiff's RFC includes a limitation to "simple repetitive tasks due to an occasional limitation in concentration" caused by pain from headaches. (T 18)

The ALJ reviewed the treatment records of Plaintiff's treating neurologist, Thomas DiGeronimo, M.D. ("Dr. DiGeronimo"), from February 2003 through November 2004 and noted that Dr. DeGeronimo saw no significant abnormalities with Plaintiff's mental functioning. (T 384-87, 440-55)  In fact, Dr. DeGeronimo's findings were consistently unremarkable. He diagnosed tension headaches with superimposed migraines, neck pain, and anxiety/depression. (T 387) Dr. DeGeronimo prescribed Plaintiff different medications in an attempt to decrease the frequency of her headaches, but after each office evaluation he noted her condition as stable.

Additionally, in August 2003, a physician at Suncoast Community Health, Inc. who evaluated Plaintiff also indicated that her headaches were "stable." (T 508)  A brain scan performed that month at Dr. DeGeronimo's request was basically normal. (T 454)  Further, prior to his November 2005 RFC assessment (discussed below), Dr. DeGeronimo had not opined that Plaintiff was totally disabled or that she suffered from functional limitations.  Additionally, after Dr. Sidhom administered nerve-block therapy for back pain, Plaintiff reported that her functional performance had improved, and she denied any new neurological symptoms. (T 490)

Plaintiff, however, points to the RFC assessment submitted by Dr. DeGeronimo in November of 2005 (after the ALJ's decision) that Plaintiff's headaches are severe enough to prevent her from

working at even low stress jobs. (T 567-71) The Appeals Council considered Dr. DiGeronimo's RFC determination when it denied Plaintiff's request for review on February 16, 2006. (T 8)

To the extent Plaintiff is challenging the ALJ's decision to deny benefits, but not the Appeals Council's decision to deny review of the ALJ's decision, the court need not consider Dr. DeGeronimo's November 2005 opinion (submitted to the Appeals Council but not the ALJ). <u>See Falge v. Apfel</u>, 150 F.3d 1320, 1323 (11th Cir. 1998), <u>cert. denied</u>, 525 U.S. 1124 (1999). However, it appears Plaintiff also challenges the Appeals Council's decision to deny review despite receipt of the November 2005 RFC assessment (Dkt. 21 at 10).

Both parties cite the standard for remand for consideration of new evidence under "sentence six" of the Act (<u>see</u> Dkt. 21 at 9-10; Dkt. 23 at 14).  To obtain a sentence six remand, a claimant must establish that: (1) there is new, non-cumulative evidence; (2) the evidence is material in that it is relevant and probative so that there is a reasonable probability that it would change the administrative results; and (3) there is good cause for failure to submit the evidence at the administrative level.   <u>Cannon v. Bowen</u>, 858 F.2d 1541, 1546 (11th Cir. 1988) (internal citations and quotation marks omitted).

However, a remand to the Commissioner is proper under sentence six only when new and material evidence that was not incorporated into the administrative record comes to the attention of the district court.  In <u>Ingram v. Commissioner of Social Security</u>, No. 06-14602, __ F.3d __, 2007 WL 2385076, at * 13 (11th Cir. Aug. 23, 2007), the Eleventh Circuit recently clarified that "[s]entence six allows the district court to remand to the Commissioner to consider previously unavailable evidence; it does not grant a district court the power to remand for reconsideration of evidence previously submitted to the Appeals Council."  In this case, Dr. DeGeronimo's November

12

2005 evaluation fails to meet the criteria for a sentence six remand because it is not new evidence that the Commissioner failed to incorporate into the administrative record.  Dr. DeGeronimo's evaluation was properly submitted to the Appeals Council, which considered the evaluation and incorporated it in the administrative record.[8] (T 8)  Therefore, remand under sentence six is inappropriate.  See Ingram, 2007 WL 2385076 at * 13.   Because Plaintiff argues that the Appeals Council did not conduct a meaningful review of her case before it affirmed the ALJ's decision (Dkt. 21 at 10), Dr. DeGeronimo's November 2005 RFC assessment may be the basis for a sentence four remand, but not a sentence six remand.

Thus, under Ingram, the court reviews whether the Appeals Council's decision to deny benefits is supported by substantial evidence in the record as a whole, including Dr. DeGeronimo's November 2005 RFC assessment.  Id. at * 10-11.  The administrative record as a whole contains substantial evidence to support the denial of benefits.  As discussed above, Dr. DeGeronimo based his RFC assessment solely on his treatment notes, which the ALJ thoroughly reviewed, and which do not support a finding of disability.  Dr. DeGeronimo consistently evaluated Plaintiff's headache condition as stable.  He never opined that Plaintiff suffered from any functional limitations due to her headaches.

---

[8]  The ALJ held the record open for 30 days following the April 4, 2005 hearing for Plaintiff to obtain additional records. (T 56) On April 4, 2005, Plaintiff's representative wrote to Dr. DeGeronimo and requested that he complete an RFC assessment form because the handwriting on the neurologist's treatment notes was difficult to read. (T 566) Dr. DeGeronimo failed to respond to the request within 30 days; in fact, he did not complete his RFC assessment until November 2005, six months after the administrative record was closed. Plaintiff then submitted the evidence to the Appeals Council. (T 553)

Dr. DeGeronimo's treatment notes are not indicative of totally disabling headaches. Therefore, even considering the November 2005 assessment, the Commissioner's decision to discount Plaintiff's testimony regarding her headache pain is supported by substantial evidence.

**C.**   Plaintiff's final argument is that the ALJ erred in finding that Plaintiff's lower back pain, obesity, hip arthritis, and neck and shoulder pain are not severe impairments.  In his decision, the ALJ found that Plaintiff suffers from the severe impairments of headaches, periodic chest pains, and arthritis in her hands and knees. (T 16)

The second step in the five-step process to evaluate whether a claimant is disabled is to determine her severe impairments.  A claimant is found not disabled if she does not have a severe impairment.  20 C.F.R. § 416.920(c).  An impairment can be considered not severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Stratton v. Bowen, 827 F.2d 1447, 1450 (11th Cir. 1987) (internal quotation marks and citation omitted).

The ALJ determined based on the entire record which of Plaintiff's impairments were severe. This court's review of the medical evidence compels the same conclusion.  Although Plaintiff was diagnosed with a history of lower back and hip pain and was treated for these conditions, none of her physicians imposed limitations on her due to these impairments.  Substantial evidence supports the ALJ's findings that Plaintiff's lower back and hip pain are not severe impairments.

In making a determination regarding Plaintiff's claims of lower back and hip pain, the ALJ stated:

> Orthopedically the claimant also has reported pain in the lower back associated with
> a history of shorter left leg following a car accident in her childhood; however,

14

lumbar x-rays and magnetic resonance imaging in May and June 2003 failed to show fracture, dislocation or disc herniation, revealing instead just diffuse degenerative disease. In January 2004 the claimant was examined by Dr. [Rakesh] Kumar, a neurosurgeon, because of a new onset of back pain caused by a fall in October 2003; however, this resulted in findings of mild degenerative changes at L4-5 and mild lumbar stenosis. In January 2004 the claimant reported hip pain to Dr. Janer but x-rays failed to show any abnormality (Ex. 16F/1, 24F/17), and there is no indication that the claimant required orthopedic care for her hip or back pain thereafter.

(T 17) Based on this evidence, the ALJ did not find Plaintiff's lower back and hip pain to be severe impairments.

A diagnosis alone is an insufficient basis for a finding that an impairment is severe. Sellers v. Barnhart, 246 F. Supp. 2d 1201, 1211 (M.D. Ala. 2002). Objective medical evidence must confirm that the impairment is severe. See Social Security Ruling 96-3p.[9] Moreover, the severity of a medically ascertainable impairment must be measured in terms of its effect upon ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality. McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). Considering the relevant facts, substantial evidence supports the ALJ's conclusion that Plaintiff's lower back and hip pain are not severe impairments despite the treatment she received for these conditions.

---

[9] SSR 96-3p sets forth the policy of the Social Security Administration in considering allegations of pain and other symptoms to determine whether a medically determinable impairment is severe. In relevant part, the policy provides:

At step 2 of the sequential evaluation process, an impairment or combination of impairments is considered "severe" if it significantly limits an individual's physical or mental abilities to do basic work activities; an impairment(s) that is "not severe" must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities . . . . A determination that an individual's impairment(s) is not severe requires a careful evaluation of the medical findings that describe the impairment(s) . . . and an informed judgment about the limitations and restriction the impairment(s) and related symptoms(s) impose on the individual's physical and mental ability to do basic work activities.

15

Plaintiff also contends that her obesity, neck and shoulder pain are severe impairments overlooked by the ALJ.  Nothing in the record indicates that Plaintiff suffers from functional limitations due to her obesity, neck and shoulder pain.  Therefore, Plaintiff has not met her burden of showing that these impairments are more than slight abnormalities with more than a minimal effect on his ability to perform basic work activities.

### III.

The ALJ's decision is supported by substantial evidence and the proper legal principles. The decision of the Commissioner denying Plaintiff's application for Disability Insurance Benefits payments is therefore affirmed.

 Accordingly and upon consideration, it is **ORDERED AND ADJUDGED** that:

(1)      the decision of the Commissioner is **AFFIRMED** and this case is **DISMISSED**, with each party to bear its own costs and expenses; and

(2)      the Clerk of Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**DONE AND ORDERED** in Tampa, Florida this 30th  day of August, 2007.


ELIZABETH A JENKINS
United States Magistrate Judge


16